UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE DIANE ARANDA; and YOLANDA LISA FONTINALLA,<br><br>Plaintiff,<br><br>v.<br><br>TARA KATUK MAC LEAN SWEENEY, United States Assistant Secretary of Interior—Indian Affairs; UNITED STATES BUREAU OF INDIAN AFFAIRS; CAROL ROGERS-DAVIS, Chairperson, Secretarial Election Board, Central California Agency, U.S. Bureau of Indian Affairs; AMY DUTSCHKE, Regional Director, Pacific Region, U.S. Bureau of Indian Affairs,<br><br>Defendants. | No. 2:19-cv-00613-JAM-KLN<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

On April 9, 2019, Plaintiffs Marie Aranda and Yolanda Fontinalla ("Plaintiffs") filed suit against the United States Bureau of Indian Affairs ("BIA") along with Tara Sweeney, Carol Davis, Tory Burdick, and Amy Dutschke in their official capacities ("Defendants"). Compl. ¶¶ 14-18. Their complaint

1

requests declaratory and injunctive relief. Compl. ¶ 12.
Jurisdiction is proper under 28 U.S.C. §§ 1331, 1362.[1] Venue is
also proper under 28 U.S.C. § 1331

On April 10, Plaintiffs filed an ex parte motion for
temporary restraining order. Mot. for TRO ("Mot."), ECF No. 4.
For the reasons discussed below, the Court denies Plaintiffs'
motion.

## I. FACTUAL ALLEGATIONS

This case arises out of a dispute that has proceeded in and out of the federal courts for over a decade. The Court presumes the parties are intimately familiar with the events leading up to this motion, and will, therefore, not reduce them to writing here.

## II. OPINION

### A. Legal Standard

Federal Rule of Civil Procedure 65 provides authority to issue preliminary injunctions and temporary restraining orders. Plaintiffs seeking these forms of injunctive relief must demonstrate (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public

---

[1] The Court disagrees with Plaintiffs' invocation of 28 U.S.C. § 1361 as a basis for jurisdiction. State of Cal. v. Settle, 708 F.2d 1380, 1384 (9th Cir. 1983) ("Mandamus may not be used to force the exercise of discretion in a particular way. Where the 'duty' alleged involves agency expertise on an issue of judgment and choice, the matter is left to the agency's informed discretion, and is not subject to mandamus.") (internal citations omitted).

interest. Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, 555 U.S. 7 (2008)).

A court may only grant an ex parte motion for temporary restraining order if (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b). These additional requirements "reflect that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." Granny Goose, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 438-39 (1974).

Temporary restraining orders are emergency measures, intended to preserve the status quo pending a fuller hearing on the injunctive relief requested. The irreparable harm must therefore be clearly immediate. Fed. R. Civ. Proc. 65(b)(1). This district's local rules further specify that the Court will consider "whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." E.D. Cal. L.R. 231(b).

B. Analysis

Plaintiffs argue that, due to the BIA's rejection of their challenge to the Registered Voters List, the Secretarial

3

Election will be exclusively decided by people who are not members of the Miwok tribe. Mot. at 2-3. Due to the impending April 15 election, they view this infringement on the Miwok's sovereignty as an immediate, irreparable injury. The Court finds that the potential harm Plaintiffs face is not irreparable. The Court also finds that Plaintiffs are not likely to succeed on the merits. Plaintiffs' failure to make a showing on these two factors prevents the Court from granting their motion. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The Court need not, and will not, address the remaining Winter factors.

          1.    Immediate, Irreparable Harm

The potential harm Plaintiffs face is not sufficiently immediate and irreparable. To the extent that the alleged harm is immediate, the immediacy is of Plaintiffs' own making. According to Plaintiffs' own allegations, Amy Dutschke set out the BIA's position that Silvia Burley and her representatives were members of the Miwok tribe as descendants of Jeff Davis on September 11, 2017. Compl. ¶ 36. On December 21, 2018, the BIA authorized a Secretarial Election on the proposed Constitution of the California Valley Miwok tribe. Compl. ¶ 36. On February 15, 2019, the BIA scheduled the Secretarial Election for April 15, 2019, and on March 18 it published a "Registered Voters List." Two days later, Plaintiffs challenged that list; a challenge the BIA rejected on March 27, 2019.

Plaintiffs urge the Court to focus on the improper inclusion of the Burley group on the Registered Voter List, but this claim is part and parcel with a challenge to the BIA's

4

earlier factual finding that the members of the Burley group are members of the Miwok tribe—a finding Plaintiffs have had constructive notice of since 2017. Plaintiffs waited two weeks after the BIA's rejection of their challenge to the Registered Voter List (6 days before the Secretarial Election) to file suit, and now claim that their ex parte motion is justified because there is not enough time for Defendants to be heard. The Court rejects this argument.

Additionally, the Court does not agree with Plaintiffs that the potential harm posed by the election is irreparable. Courts often ask whether the injury faced could be remedied by a damages award as a proxy for whether the harm is irreparable. Alliance for the Wild Rockies, 632 F.3d at 1135. More precisely, the question is whether there is an adequate alternative remedy available. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 33 (2008). Monetary damages are just one example of such a remedy.

Here, even if the BIA improperly included the Burley group on the Registered Voters List, the Secretarial Election will not harm Plaintiffs in a way that cannot be remedied. Neither the Supreme Court nor the Ninth Circuit seem to have addressed the question of whether allowing a Secretarial Election to go forward poses irreparable harm to members of a tribe who are challenging the validity of the Registered Voters List. Furthermore, the cases cited by Plaintiffs in support of their argument do not squarely cover the issue at hand. Mot. at 8 (citing Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1251 (10th Cir. 2001); Chemehuevi Indian Tribe v. McMahon,

No. 15-cv-1538-DMG-FFMx, 2016 WL 44249970 (C.D. Cal. Aug. 16, 2016); Winnebago Tribe of Nebraska v. Stovall, 216 F. Supp. 2d 1126, 1233 (D. Kan. 2002); Cayuga Indian Nation v. Vill of Union Springs, 293 F. Supp. 2d 183, 196-97 (N.D.N.Y. 2003)). These cases stand for the proposition that some forms of federal and state infringement upon a tribe's sovereignty constitute irreparable injury. But these cases primarily dealt with the irreparable harm posed by the state or federal government's attempt to inappropriately exercise jurisdiction over a tribe. See, e.g., Prairie Band of Potawatomi Indians, 253 F.3d at 1251 (finding irreparable harm where the state's continued citation of Potawatomi tribe members under the state' motor vehicle registration law impermissibly interfered with tribal self-government). Plaintiffs have not cited, nor has the Court found, any case law to suggest that the disputed, non-final results of a Secretarial Election pose a risk of irreparable harm by infringing upon a tribe's sovereignty.

Two primary considerations support the Court's finding that Plaintiffs do not face immediate, irreparable harm. First, Secretarial Election results are not final until the Chair and all members of the Secretarial Election Board certify the results of the election and address challenges to the results. 25 C.F.R. §§ 81.41, 81.43, 81.45. A period of certification and finalization cuts against Plaintiffs' argument that the risk of irreparable harm is so immediate that it justifies stopping the Secretarial Election.

Second, allowing the election to go forward does not preclude Plaintiffs from obtaining the same type of relief that

they now seek.  After certifying an election's results, the BIA must hear all challenges alleging errors that would invalidate the election.  25 C.F.R. § 81.43.  It is unclear whether Plaintiffs have standing to make a § 81.43 challenge to the BIA. 25 C.F.R. § 81.43 ("Any person who was listed on the Eligible Voters List and who submitted a voter registration form may challenge the results of a Secretarial election.").  But at this stage of the litigation, the Court does not see any reason why Plaintiffs could not challenge the BIA's decision to finalize the results of the election under the APA with the very same argument they used to challenge the Registered Voters List. Indeed, Plaintiffs' challenge to this agency decision would necessarily include their allegations that the BIA improperly allowed non-members of the tribe to vote.  The Court finds Plaintiffs' claim that they will suffer immediate, irreparable harm if a temporary restraining order is not issued is without merit.

          2.    <u>Likelihood of Success on the Merits</u>

Plaintiffs are also not likely to succeed on the merits. Nor have they "raised serious questions" about the merits. <u>Alliance for the Wild Rockies</u>, 532 F.3d at 1134-35.  Plaintiffs object to the BIA's denial of their challenge to the Registered Voters List.  Their two-part argument proceeds as follows: (1) the individuals on the list do not fall into any of the three eligibility groups previously set out by the BIA, and (2) because the BIA nonetheless found these individuals to be eligible voters, it unjustifiably departed from a previous agency decision.  Mot. at 9-11.

7

Persons "suffering legal wrong because of agency action, or adversely affected [] by agency action within the meaning of a relevant statute [are] entitled to judicial review thereof." 5 U.S.C. § 702. A person may seek review of a "final agency action" unless "statutes preclude judicial review," or "agency action is committed to agency discretion by law." 5 U.S.C. §§ 701, 704. The reviewing court will "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

The BIA's rejection of Plaintiffs' challenge was a final agency decision. 25 C.F.R. § 81.33. But the Court does not find that the decision was likely arbitrary or capricious. Fundamentally, the Court disagrees with the premise of Plaintiffs' argument. Although the Washburn Declaration set out three eligible groups of membership in the Miwok tribe, nothing in the declaration purported to identify who belonged to those groups. Everone Decl., Ex. A. Indeed, the Washburn Declaration explicitly states, "[t]o the extent the Burley Family is among the individuals who make up the Eligible Groups, I encourage them to participate in the Tribe's reorganization efforts as discussed below." Id. Dutschke's 2017 finding that the members of the Burley family were members of an eligible group does not amount to a change in the agency's position. Nor does the BIA's subsequent reliance on that finding when forming the Registered Voters List. Insofar as the BIA came to a reasoned decision that the members of the Burley family were descendants of Jeff Davis, its March 27, 2019 rejection of Plaintiffs' challenge was wholly

consistent with prior agency determinations.

The BIA's finding that the members of the Burley family were descendants of Jeff Davis was neither arbitrary, capricious, nor an abuse of discretion. According to Plaintiffs' genealogist, Chad Everone, the Burley family cannot be descendants of Davis because Davis had only one son, and that son died before having any children. Everone Decl. ¶ 8. Everone refutes the Burley's claims that Davis, in fact, had another son—John Jeff—and that the Burleys belong to this lineage. Id. ¶ 9. John Jeff, according to Everone, was actually the son of another Jeff: "Indian Jeff (a.k.a., Westpoint Jeff)." Id. Everone is the Deputy of the California Valley Miwok Tribe, and has maintained the Tribe's genealogical records since 2003.

Genealogy, when only based on letters and word of mouth is an imperfect science. The Court is not hard-pressed to imagine how the Burley's genealogical documentation may have told the BIA a different story about the relationship between John Jeff and Jeff Davis. Plaintiffs do not present the Court with those documents, and this Court is not in a position to determine which of those stories is correct. The APA affords much discretion to agency decision-making, in part, because of the wisdom of deferring to those with the most expertise. The BIA is better suited than the federal courts to assess the viability of claims to tribal membership. The BIA made that assessment here. At this stage, the Court does not find it likely that Plaintiffs can show the BIA's decision was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Plaintiffs have neither shown that they are likely to succeed on the merits, nor

raised a serious question about the merits.

### III. ORDER

For the reasons set forth above, the Court DENIES Plaintiffs' ex parte motion for temporary restraining order.

IT IS SO ORDERED.

Dated: April 15, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE